**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4172-17T4

ACTREO LLC SERIES 972
S BROADWAY,

     Plaintiff-Appellant,

v.

MASSARI SERVICE COMPANY
LLC, WILMINGTON SAVINGS
FUND SOCIETY FSB, DELAGE
LANDEN FINANCIAL SERVICES,
and STATE OF NEW JERSEY,

     Defendants,

and

TELECOM ACQUISITION GROUP, LP,

     Defendant/Intervenor-
     Respondent.

_____

Argued April 4, 2019 – Decided April 29, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Salem County, Docket No. F-007343-16.

Keith A. Bonchi argued the cause for appellant (Goldlenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi, of counsel and on the brief; Elliott J. Almanza, on the briefs).

Mark E. Hall argued the cause for respondent (Fox Rothschild LLP, attorneys; Mark E. Hall and Michael R. Herz, on the brief).

PER CURIAM

In this tax sale certificate foreclosure matter, plaintiff Actreo LLC Series 972 S Broadway (Actreo) appeals from the February 14, 2018 Chancery Division order, which granted the motion of intervenor Telecom Acquisition Group, LP (Telecom) to vacate a final judgment entered on November 4, 2016. Actreo also appeals from the April 24, 2018 order permitting Telecom to intervene and redeem the tax sale certificate, among other things. We reverse.

Defendant Massari Service Company LLC (Massari) was the owner of property located in the Township of Pennsville (Township). Sprint Spectrum Realty Company, LP, a telecommunications company, leased the property from Massari and constructed a cell tower on the property.

Telecom is in the business of purchasing long-term interests in existing telecommunication leases on properties with telecommunication assets, such as

a cell tower. Telecom enters into a management agreement with the property owner and pays the owner a lump sum representing the rents Telecom expected to collect from the leases.

On September 25, 2003, Massari and Telecom entered into a management agreement under which Telecom would pay Massari $80,000 to manage the property, collect rents, and negotiate and execute leases. The management agreement identified Massari as the owner of the property and Telecom as the manager and provided as follows:

> Owner and Manager acknowledge and agree that the relationship between them is solely that of principal and independent contractor, and <u>nothing shall be construed to constitute the parties as</u> employer and employee, partners, joint venturers, <u>co-owners</u> or otherwise as participants in a joint or common undertaking. Neither party, nor its employees, agents or representatives shall have any right, power or authority to act or create any obligation, express or implied, on behalf of the other.
>
> [(Emphasis added).]

In connection with the management agreement, Massari, as property owner, and Telecom, as optionee, executed a Memorandum of Option to Lease and Right of First Refusal (memorandum). The memorandum gave Telecom the option to lease the property when the current lease expired and the right of first refusal to purchase the property if any of the four transactions enumerated

3

in the memorandum occurred. The memorandum was recorded with the Salem County Clerk on November 19, 2003.

Massari did not pay the property taxes for the year 2012. As a result, on May 21, 2013, the Township conducted a tax sale. Actlien Holding, Inc. (Actlien) purchased the tax sale certificate on May 21, 2013. On December 10, 2013, Actlien assigned the tax sale certificate to US Bank as custodian for Actlien.

On March 14, 2016, US Bank as custodian for Actlien filed a foreclosure complaint against Massari, a mortgagor, and a judgment holder, and filed an amended complaint against these defendants on March 17, 2016. A title search on the property revealed the recorded memorandum, but Telecom was not named as a defendant. On June 6, 2016, the court entered default against defendants. On June 30, 2016, the court entered an order setting August 16, 2016 as the date of redemption and setting the amount of redemption. The tax sale certificate was not redeemed.

US Bank as custodian for Actlien assigned the tax sale certificate to Actreo. On October 11, 2016, the court entered an order substituting Actreo as the plaintiff. On November 4, 2016, the court entered final judgment in Actreo's favor.

A-4172-17T4

On November 3, 2017, Telecom filed a motion to vacate the final judgment under Rule 4:50-1(d) and (f). Telecom argued that by virtue of the recorded memorandum, it had a right to notice of the tax sale foreclosure action and a right to redeem the tax sale certificate. Actreo countered that Telecom was not entitled to notice and lacked standing and the right to redeem because it did not fall under the limited class of parties entitled to redeem a tax sale certificate under N.J.S.A. 54:5-54, which provides as follows:

> Except as hereinafter provided, the owner, his heirs, holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to [N.J.S.A.] 54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector, or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs or assigns, the amount required for redemption as hereinafter set forth.

The court held a plenary hearing to determine the nature of Telecom's interest in the property. The evidence confirmed that Telecom was not an owner or co-owner of the property, did not hold any prior outstanding tax lien certificate, did not occupy or lease the property, and had no mortgage on the property. The evidence also confirmed that Telecom and Massari never executed a contract of sale for the property and none of the four transactions

A-4172-17T4

enumerated in the memorandum occurred to permit Telecom to exercise its right of first refusal.

The trial court granted Telecom's motion to vacate the final judgment. The court first found that the memorandum gave notice of Telecom's interest in the property and Telecom had a right to be named in and served with the tax sale foreclosure complaint under <u>Rule</u> 4:64-1(b)(11).

The court next found that Telecom had the right to redeem the tax sale certificate by virtue of the memorandum. In so finding, the court interpreted the term "occupant" in N.J.S.A. 54:5-54 to include any person or entity that had a valid recorded interest in the land that will be extinguished by the foreclosure. The court concluded that Telecom was an owner or occupant of the property under the statute because it had purchased the owner's right to receive future rental payments, manage leases, and purchase the property, and the tax sale foreclosure extinguished those rights. The court entered an order on February 14, 2018, vacating the final judgment. The court entered an order on April 24, 2018, amending the February 14, 2018 order to permit Telecom to intervene and redeem the tax sale certificate and requiring an escrow of rents, among other things.

A-4172-17T4

We review the trial court's decision on a motion to vacate a default judgment for abuse of discretion. Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012). However, we review an issue of statutory interpretation de novo and owe no deference to the trial court's statutory interpretation. McGovern v. Rutgers, 211 N.J. 94, 108 (2012). In a de novo proceeding, we do not use an abuse of discretion standard, but make our own findings of fact. In re Phillips, 117 N.J. 567, 578 (1990); see also Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18, 25 (App. Div. 1985) (citations omitted) ("On a hearing de novo the appellate tribunal has the right to review the record and make its own findings of fact and conclusions based upon the record below . . . and is not restricted to the 'abuse of discretion test.'").

Because the court based its decision on an interpretation of N.J.S.A. 54:5-54, our review is de novo. Thus, we can review the record and make our own findings of fact and conclusions based thereon. See Grasso, 205 N.J. Super. at 25.

"The right to redeem land from a tax sale is . . . statutory in origin and the rights arising from it are fixed and determined by [N.J.S.A. 54:5-4]." Caput Mortuum, L.L.C. v. S & S Crown Servs. Ltd., 366 N.J. Super. 323, 332 (App. Div. 2004). Prior to 1994, N.J.S.A. 54:5-54 permitted "an owner, holder of an

A-4172-17T4

outstanding tax lien certificate, mortgagee, or occupant . . . [and] any 'other person having an interest in land sold for municipal liens,' taxes or other municipal charges" to redeem a tax sale certificate prior to the entry of judgment. Id. at 331 (emphasis added).

A 1994 amendment to the statute deleted the phrase "any other person having an interest in land." Ibid. By deleting that language, "the Legislature restricted the statutory right to redeem land in a foreclosure proceeding to specific persons or entities who have a direct interest in the property being sold for municipal liens and excluded all others." Id. at 333 (emphasis added). Thus, in Caput Mortuum, we declined to interpret the statute broadly to include judgment creditors within the class of persons entitled to redeem. Id. at 334. We determined that judgment creditors do not fall under the statute because they do not have the status of an owner or the same type of direct interest in the land as a mortgagee. Id. at 333-34.

"Given the narrow scope with which courts interpret the parties entitled to redeem a tax sale certificate," an interest in property that is not, by definition, one of the interests enumerated in the statute does not vest the interest-holder with a right to redeem, even if the interest-holder is "in a similar position with similar rights" to the individuals or entities listed in N.J.S.A. 54:5-54. JNH

Funding Corp. v. Ayed, 450 N.J. Super. 271, 280-81 (Ch. Div. 2017) ("While a condominium association lienholder may be in a similar position with similar rights to a mortgagee, it is still not a mortgagee by definition.").

Telecom was not the owner of the property and did not have the status of an owner. The memorandum gave Telecom no ownership interest or rights of ownership. Rather, the management agreement specified that "nothing shall be construed to constitute the parties as . . . co-owners," and Telecom had no "right, power or authority to act or create any obligation, express or implied, on behalf of" the owner with respect to the property.

Telecom also was not an occupant of the property and did not have the status of an occupant. In considering whether one is an "occupant" for the purposes of N.J.S.A. 54:5-54, our courts have noted that "[i]t was not the legislative intent to accord a mere squatter or trespasser the right to obtain from a bona fide purchaser the right to redeem a tax sale certificate from a bona fide purchaser thereof." Jefferson v. Davis, 25 N.J. Super. 135, 148 (Ch. Div. 1953). "An occupant, to come within the statutory definition, must be a lawful occupant, having a lawful right or interest in the land." Ibid. Furthermore, the term "occupant" under N.J.S.A. 54:5-54 "undoubtedly denotes one who has actual use and possession . . . ." Taylor v. Borgfeld, 139 N.J. Eq. 177, 179 (Ch.

1947).  Telecom was not a lawful occupant of the property and never had actual use and possession of the property.

Telecom was not a mortgagee and did not have the same type of interest in the property as a mortgagee.  A mortgagee has a direct interest in the land by virtue of a recorded mortgage.  See Caput Mortuum, 366 N.J. Super. at 333-34. The recorded memorandum did not give Telecom any interest in the land itself. It merely gave Telecom a contractual right to manage the property and collect the rents, an option to lease the property, and a right of first refusal to purchase the property if one of the transactions enumerated in the memorandum occurred.

We have held that an option to lease

> is not a bilateral contract.  It is a unilateral agreement, an offer irrevocable for the time limited by the option. To ripen into a contract, the offer must be accepted within the time so limited and the acceptance must in every respect meet and correspond with the offer, "neither falling within nor going beyond the terms proposed."
>
> [Willow Brook Recreation Ctr., Inc. v. Selle, 96 N.J. Super. 358, 365 (App. Div. 1967) (quoting Martindell v. Fiduciary Counsel, Inc., 131 N.J. Eq. 523, 524 (Ch. 1942)).]

Although a right of first refusal closely resembles an option contract, it confers fewer rights on the holder.  "A privilege of first refusal does not give the holder of the privilege the power to compel the owner to sell.  It merely

A-4172-17T4

requires the owner, if and when he decides to sell, to offer the property to the holder at a stipulated price." Madison Indus., Inc. v. Eastman Kodak Co., 243 N.J. Super. 578, 586-87 (App. Div. 1990). We have held that a person with a right of first refusal "has no estate in the land but acquires merely inchoate rights therein which during the option period will be protected in equity." Am. Dream, Inc. v. Franklin Twp., 130 N.J. Super. 546, 550 (App. Div. 1974); see also State v. N.J. Zinc Co., 40 N.J. 560, 576 (1963) ("An option does not create any interest in the land . . . ."). "Those rights and interest in the property do not vest in an optionee until he has effectively made his election under the option." Am. Dream, Inc., 130 N.J. Super. at 550.

Telecom never exercised the option to lease and could not have done so because the current lease had not expired. Telecom never exercised its right of first refusal and none of the four transactions enumerated in the memorandum occurred to permit Telecom to do so. Thus, Telecom had no direct interest in the land.

Telecom's status is much more analogous to that of a judgment creditor than that of an owner, occupant, or mortgagee. Pursuant to the memorandum, Telecom had an interest in the rents due to Massari. That interest was not tied to the property but was enforceable against Massari, as provided by the express

11

terms of the management agreement. Under the management agreement, Massari was obligated to pay all taxes on the property and failure to do so constituted a default. The management agreement outlined Telecom's rights in the event of Massari's default, including the right to indemnification "from and against any and all [c]laims" arising out of "the foreclosure of [Massari's] interest in the [property]" or "any failure on the part of [Massari] to perform or comply with any of the covenants, agreements, terms or conditions contained in [the management agreement] on its part to be performed or complied with[.]"

The management agreement further provided that in the event of Massari's default, Telecom was entitled to payment from Massari of all rents Telecom expected to collect under the leases "for the then entire unexpired balance of the [t]erm of [the management agreement.]" Massari had an obligation to pay those rents to Telecom. Accordingly, Telecom's rights were merely contractual and were not comparable to a direct property interest conferred by a mortgage. The tax sale foreclosure did not extinguish Telecom's contractual right to collect the rents from Massari.

Furthermore, Caput Mortuum is undoubtedly applicable to this matter insofar as it reveals the Legislative intent of N.J.S.A. 54:5-54 to restrict the right to redeem to those interests clearly delineated in the statute. Telecom was not

an owner, occupant or mortgagee of the property and had no direct interest in the property, much less a redeemable interest. Consequently, Telecom was not entitled to redeem the tax sale certificate, nor was it entitled to notice of the tax sale foreclosure action or to intervene.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4172-17T4