766 A.2d 771

JOSEPH PEPE, III, PLAINTIFF–RESPONDENT, v. TOWNSHIP
OF SPRINGFIELD, A MUNICIPAL CORPORATION IN THE
STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 6, 2000—Decided January 26, 2001.

Before Judges BAIME and CARCHMAN.

*Allan C. Roth* argued the cause for appellant (*Ruderman & Glickman*, attorneys; *Mark S. Ruderman*, of counsel; *Mr. Ruderman and Mr. Roth*, on the brief).

*Robert F. Renaud* argued the cause for respondent (*Palumbo & Renaud*, attorneys; *Mr. Renaud*, on the brief).

The opinion of the Court was delivered by

CARCHMAN, J.A.D.

This is an appeal by defendant Springfield Township from an order of the Law Division dismissing disciplinary charges filed against plaintiff, Joseph Pepe, a firefighter with the Springfield Fire Department (the Department). Following a disciplinary hearing resulting in his conviction and a three-month suspension without pay, plaintiff filed a *de novo* appeal in the Law Division pursuant to *N.J.S.A.* 40A:14-22. The Law Division judge found that plaintiff had been disciplined for offenses beyond the scope of the charges and specifications. We conclude that the charges and specifications provided adequate and appropriate notice of the charges; accordingly, we reverse and remand.

We briefly review the essential facts adduced at the hearing. The genesis of the underlying disciplinary proceeding arises from

a false fire alarm perpetrated by members of the Department. On November 9, 1998, plaintiff and others went to Scotty's Bar in Springfield. During the course of the evening, one of plaintiff's colleagues, Chris Lalevee, was instrumental in instigating a third party to call in a false alarm. The record supports the finding that plaintiff participated in a preliminary discussion about the call and then joined the other perpetrators at or near the area of the telephone. Although plaintiff denied that he was in the bar at the time of the call, the hearing officer made a factual determination that plaintiff "was most likely present in the bar when the call was made." The incident resulted in criminal charges against Lalevee and another firefighter, and ultimately, in disciplinary charges against plaintiff.

The issue on appeal focuses upon the nature and quality of those charges and specifications. Plaintiff was served with a Notice of Disciplinary Action. It includes detailed specifications as to the incident and sets forth as Charges violations of Articles I and VI(A), (B), (C) and (J) of the Rules and Regulations of the Springfield Fire Department (a copy of the charges and specifications is attached as Appendix A). After considering the witness testimony and exhibits presented, the hearing officer concluded:

> Based on the above as well as the preponderance of the evidence and testimony as presented I find that Joseph Pepe did have knowledge of the false alarm call which was initiated and carried through by Firefighters Lalevee and Voorhees. I further find that Joseph Pepe did not attempt to restrain or report the incident. However, I find that Joseph Pepe did not instigate the incident and was more an accomplice by knowledge and association but because of his relationship to the other firefighters involved did not report the incident.

> Therefore I find that Firefighter Joseph Pepe violated Article I.5 of the Rules and Regulations of the Springfield Fire Dept., and Article VI.A for his failure to put the needs of the Department ahead of his personal relationships, Article VI.B.1 for his failure to notify the appropriate supervisors of his knowledge with respect to the false alarm call and Article VI.C.1., 2., 7., 11., 12. because of his failures to properly notify the appropriate authorities.

> As such Joseph Pepe's conduct was not consistent with that required by the Department.

The hearing officer recommended a penalty of three months suspension rather than dismissal.

On appeal to the Law Division and motion for summary judgment, plaintiff asserted that he was disciplined for offenses for which he was not charged. He claimed that he was never advised of being charged with failure to restrain or report a violation. The Law Division judge agreed, and concluded that plaintiff was found guilty of charges not included in the specifications and "not given a chance to defend against those particular charges." The judge then set aside the suspension, ordered back pay, and stayed the decision pending this appeal.

"Plain notice" is the standard to be applied when considering the adequacy of disciplinary charges filed against public employees. "It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority." *Town of West New York v. Bock*, 38 *N.J.* 500, 522, 186 *A.*2d 97 (1962). *See also Borough of Ho-Ho-Kus v. Menduno*, 91 *N.J.Super.* 482, 485, 221 *A.*2d 228 (App.Div.1966) (noting that a public employer can only find an employee guilty of offenses specifically mentioned in the charges). These principles emanate from the concept of affording due process and fairness to proceedings which impact so significantly on an employee. *See, e.g., Hammond v. Monmouth County Sheriff's Dep't*, 317 *N.J.Super.* 199, 206, 721 *A.*2d 743 (App.Div. 1999) (noting that an appointing authority's broadening of local-level charges on subsequent appeal would "surcharge the right to appeal with a cost which violates any decent sense of due process or fair play"); *In re Caldwell v. Dep't of Corrections*, 250 *N.J.Super.* 592, 615–17, 595 *A.*2d 1118 (App.Div.), *certif. denied*, 127 *N.J.* 555, 606 *A.*2d 367 (1991) (noting the " 'essential requirements of due process . . . are notice and an opportunity to respond' " before any significant deprivation of an employee's constitutionally protected property interest in his employment) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 *U.S.* 532, 545–46, 105 *S.Ct.* 1487, 1495, 84 *L.Ed.*2d 494, 506 (1985)).

Our review of the record leads us to conclude that plaintiff had full notice of the charges and specifications, and that the

ultimate conclusion reached by the hearing officer fell well within the four corners of those charges and specifications. We observe that plaintiff's specific involvement in the incident was the crux not only of the disciplinary prosecution, but of plaintiff's defense as well. In agreeing with plaintiff that he was not a principal participant in the false alarm scheme, the hearing officer nevertheless concluded that plaintiff's actions were akin to an accomplice, as he knew of the incident and took no action in that regard.

We agree with the hearing officer's conclusion that plaintiff was in violation of the charges, and we reject plaintiff's view that the disciplinary determination was beyond their scope. The hearing officer found that plaintiff was present at the scene, overheard the conversation about the false alarm, and took no action. Plaintiff's defense was that he knew nothing about the false alarm and was not present when the call was made. To suggest that the failure to establish that he actively participated in the call precludes a finding that he knew of the call and took no action is too myopic a view of the charges and specifications and the underlying requirement of notice.

Plaintiff's knowledge of the event was necessarily the underpinning of any charge against him. It was the seminal fact that had to be established, whether plaintiff was an active participant or simply an accomplice. That is the fact which plaintiff challenged in defense to the charges and which the hearing officer decided against him. Once plaintiff's knowledge was established, the duties incumbent upon any firefighter as clearly set forth in the Code of Ethics and the Notice charges applied.

We need not dwell upon whether the ultimate charges were "lesser included." In our view, the obligation of reporting such a clear violation of the law is so basic and primary to a firefighter's duties that plaintiff's argument of lack of notice rings hollow. Any citizen using common sense, let alone a firefighter, would recognize that false alarms place citizens and firefighters at significant personal risk by deploying scarce public resources to respond to charades when those resources may be needed elsewhere for real

emergencies. The obligation of fair notice to plaintiff was unquestionably met in this case, and the judge erred by dismissing the charges.

The charges against plaintiff must now be tested on the merits at a *de novo* hearing. *N.J.S.A.* 40A:14–22. Accordingly, we remand the matter to the Law Division for such hearing.

Reversed and remanded.

## APPENDIX A

Township of Springfield Fire Department

By: Chief William Gras
Springfield Fire Department
Township of Springfield
County of Union
State of New Jersey

### * NOTICE OF DISCIPLINARY ACTION *

*DISCIPLINARY CHARGES AGAINST FIREFIGHTER
JOSEPH PEPE III*

Pursuant to the provisions of *N.J.S.A.* 40A:14–19 and the Township of Springfield Fire Department Rules and Regulations, I hereby make the following charges against Firefighter Joseph Pepe III of the Springfield Fire Department, Township of Springfield, County of Union, State of New Jersey, and request that a hearing be held by the Township Committee of the municipality or its designee, and the proper action be taken therein, in accordance with applicable law.

## I. SPECIFICATIONS

On November 9, 1998, Firefighter Pepe while off duty went to Scotty's Restaurant with numerous other members of the Department. Sometime between 9:00 and 9:30 p.m., Pepe, together with Firefighter Christopher La[l]evee and Firefighter Donald Voorhees attempted to have a citizen call in a false alarm to the Fire

Department. The citizen refused. Having failed in their first attempt, the three (3) firefighters requested that an employee of Scotty's Restaurant transmit the false alarm call. In order to induce the person to make the false alarm call, payment was offered. The three (3) firefighters along with the woman proceeded to place a telephone call to the Fire Department using a public telephone at Scotty's and then had the woman state that there was a leaf fire at 9 Kipling Avenue in Springfield. Witnesses reported that the firefighters were laughing and acting like the entire matter was a big joke. Immediately after placing the telephone call, the three (3) firefighters left Scotty's stating that they knew that their beepers would be activated and that they should not be in the restaurant when the call was traced to Scott[y']s. In addition to the false alarm, there also was a leaf fire started in the Township that same evening.

As a result of the call, the Fire Department responded to Kipling Avenue. There was no 9 Kipling Avenue nor was there any fire. It was clear that the call was a false alarm. As part of the investigation, Captain Rau requested that an officer review the Department's caller ID to determine from where the false alarm call was made. It was determined that the call was placed from a public telephone at Scotty's Restaurant.

After the incident was reported to the Department, an investigation was conducted by the Union County Prosecutor's Office Arson Unit. The Department was notified that Firefighters Voorhees and Lalevee were to be criminally charged. Firefighter Lalevee was placed on unpaid suspension as a result of the criminal charges. Firefighter Voorhees was discharged without a hearing because he was a probationary employee. At that time, the Department was unaware that there was a third firefighter involved in the matter. It was only after the two (2) firefighters cut their deal with the Prosecutor's Office was Pepe's involvement in the matter disclosed to the Department. Once his identity was provided, an investigation was conducted.

The investigation included a meeting with Pepe, who denied any wrong-doing, involvement or knowledge that a false alarm was called in by Firefighters Lalevee and Voorhees. However, the Prosecutor's Office provided the Department with copies of interview memoranda of the witnesses to the events. One witness positively identified Pepe as being involved in the matter. Although the Prosecutor's Office did not indict Pepe, the matter was turned over to the Department for internal consideration relative to Firefighter Pepe. On or about April 25, 1999, the witness provided by the Prosecutor's Office was questioned about the incident. During the course of the interview, the witness corroborated her statements contained in the interview memorandum and clearly implicated Firefighter Pepe not only in knowing that a false alarm was going to be made, but that he accompanied Lalevee and Voorhees to the public telephone to have the woman make the call to the Department.

## II. CHARGES

By engaging in the conduct set forth in the specifications above, Firefighter Joseph Pepe III violated his oath of office and Articles I, VI(A), (B), (C) and (J), of the Rules and Regulations of the Springfield Fire Department. The relevant provisions of the Preamble, Article I and VI(A), (B), (C), (E) and (J) of the Rules and Regulations provide as follows:

PREAMBLE

I do solemnly swear or affirm that I will support and comply with the Constitution of the United States of America, the Constitution and the Laws of the State of New Jersey, the Charter, Laws and Ordinances of the Township of Springfield, the Rules and Regulations of the Fire Department, and the Code of Ethics, and that I will faithfully discharge the duties of my office as a member of the Township of Springfield Fire Department to the best of my ability.

ARTICLE I

5. Failure of Fire Department Personnel either willfully or through negligence or incompetence to perform the duties of their rank or assignment, or violation by any Fire Department Personnel or civilian employee of any Department regulation or order, may be considered sufficient cause for disciplinary action.

ARTICLE VI

A. CODE OF ETHICS. Fire fighting is an honorable calling. Service in this field demands a professional rather than an occupational philosophy. Personal honor, a desire for professional status, and devotion to service above self, are the motives which compel Fire Department Personnel to discharge their responsibility in full measure.

Fire Department Personnel's lives involve self-sacrificing service to a high ideal, based upon his recognition of the responsibilities entrusted to him and the belief that fire prevention is an honorable vocation. They perform the functions of their office without fear, favor, or prejudice and does [sic] not engage in unlawful or improper practices.

They do not seek to benefit personally by any confidential information which has come to them by virtue of their assignment. They are respectful and courteous to all citizens. They are faithful and loyal to their organization.

Rigid adherence to the principles set out above is mandatory for anyone accepting a position in the Township of Springfield Fire Department. Acceptance of these principles should not be perfunctory: it should be weighed carefully. Citizens are quick to criticize any misconduct of members of the Department; the community places a trust in Fire Department Personnel and expects them to so conduct themselves as to merit this trust. Members should be proud to hold a position that demands so much.

Each member of the Springfield Fire Department will be required to conform to the Code of Ethics, as contained herein.

B. PROFESSIONAL CONDUCT AND RESPONSIBILITIES.

1. Standard of Conduct. Members and employees shall conduct their private and professional lives in such a manner as to avoid bringing the Department into disrepute.

2. Loyalty. Loyalty to the Department and to associates is an important factor in Departmental morale and efficiency. Members and employees shall maintain a loyalty to the Department and their associates as is consistent with the law and personal ethics.

3. Cooperation. Cooperation between the ranks and units of the Department is essential. Therefore, all members are strictly charged with establishing and maintaining a high spirit of cooperation within the Department.

C. GENERAL RESPONSIBILITIES.

1. Protect life and property.

2. Enforce all State and local laws and ordinances coming within the Departmental jurisdiction.

7. Be accountable and responsible to their supervisors for obeying all lawful orders.

11. Perform their duties promptly, faithfully, diligently.

12. Perform all related work as required.

J. PUBLIC ACTIVITIES.

5. Conduct Toward the Public. Members and employees shall be courteous and orderly in their dealing with the public. They shall perform their duties quietly,

avoiding harsh, violent, profane or insolent language, and always remain calm regardless of provocation to do otherwise. Upon request, they are required to supply their names and badge numbers in a courteous manner. They shall attend to requests from the public quickly and accurately, avoiding unnecessary referral to other parts of the Department.

By engaging in conduct set forth in the specifications above Firefighter Joseph Pepe III violated the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct as articulated in *Hartmen[Hartmann] v. [Police Department of Village of ]Ridgewood*, 258 *N.J.[Super.]* 32, 39–40[, 609 *A.2d* 61] (1992), and *City of Asbury Park v. Civil Service*, 17 *N.J.* 419, 429 [111 *A.2d* 625] (1955).

## III. RECOMMENDED PENALTY

Based upon the foregoing specifications and charges, as well as the seriousness of the charges and for the safety and welfare of the public and Department, I hereby recommend that Firefighter Joseph Pepe III be immediately suspended without pay and be terminated from further employment with the Department.

By: /s/ William Gras

Chief William Gras

Springfield Fire Department

Township of Springfield

County of Union

State of New Jersey