**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4786-18

IN THE MATTER OF
ALEX NAVAS,
TOWN OF WEST NEW YORK

_____

Submitted January 13, 2021 – Decided April 19, 2021

Before Judges Alvarez and Geiger.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-1279.

DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys for appellant Town of West New York (Andrés Acebo, of counsel; Gregory J. Hazley, on the briefs).

Weissman & Mintz, LLC, attorneys for respondent Alex Navas (Jason L. Jones, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey Civil Service Commission (Melissa H. Raksa, Assistant Attorney General and Dominic L. Giova, Deputy Attorney General, on the brief).

PER CURIAM

The Town of West New York (the Town) appeals the Civil Service Commission's (CSC) June 27, 2019 final agency decision partially reversing an Administrative Law Judge's (ALJ) decision. We affirm in part, and reverse and remand in part.

Alex Navas, a Department of Public Works (Department) sanitation inspector, had disciplinary charges sustained against him which resulted in a thirty-day suspension. The final notice of disciplinary action (FNDA) states:

> On 05/01/17, you did not follow proper protocol with respect to construction debris that you removed from 222 67[th] Street. Specifically, you removed the construction debris which was left on the side walk located in front of 222 67th Street without notifying the resident that he has two hours to remove the debris or make arrangements for the debris to be removed. When you returned to the [Department] garage with the debris in your truck, you were advised by . . . Ms. Baldeo of the proper protocol and told to return the debris to 222 67th Street. You were also told to notify the resident of his responsibility to remove the debris from the sidewalk. You did not return all of the debris to this address and placed some in the [Department] garage and some at other properties.
>
> Additionally, on May 15, 2017, Silvio Acosta, Director of the Department of Public Works assigned you to investigate a list of violations at various properties in the Town of West New York. However, you refused Mr. Acosta's directive.
>
> On or about May 19, 2017[,] you were ordered by Supervisor Ramon Lago to take action regarding pallets

A-4786-18

located on 49th and Bergenline, which were there for more than 10 days. Specifically, you were directed to investigate for a possible violation. Yet, you did not take any action with respect to the violation in direct insubordination of your superiors and endangering the residents of the Town.

Navas appealed, and the matter was transmitted to the Office of Administrative Law for hearing as a contested case. See N.J.S.A. 52:14B-1 to B-15, and 52:14F-1 to F-13.

Navas and various members of the Department testified at the hearing. The ALJ found by a preponderance of the credible evidence that charges of insubordination, neglect of duty, and conduct unbecoming an employee should be sustained as to the May 1, 2017, and May 15, 2017 incidents. The ALJ also determined that charges resulting from the May 19, 2017 incident were not established, and accordingly modified the thirty-day suspension penalty to twenty days.

The CSC affirmed the ALJ's decision as to the May 19, 2017 charge. It concurred that "the appointing authority did not establish by a preponderance of the evidence that the appellant refused a supervisor's order to investigate for a possible violation or to 'take any action' regarding pallets left outside a particular address." With regard to the May 1, 2017 incident, however, the CSC considered the order that was issued for Navas to return the construction debris

A-4786-18

to the sidewalk where he found it to be "unfathomable." The order "was in no way in the best interest of the public." Therefore, it reversed that finding.

Nor did the CSC agree with the ALJ's decision regarding the May 15, 2017 incident. The CSC concluded the FNDA alleged conduct different from that addressed at the initial and the administrative law hearings. The FNDA "made no mention of [Navas's] failure to issue summonses, and . . . the ALJ found no evidence that the appellant was ever given a list of violations of various properties to investigate . . . ." Thus, the CSC concluded that charge could not be sustained.

The conduct that led to these proceedings can be briefly described. On May 1, 2017, the Department's administrative assistant Marileidys Baldeo directed Navas to the address noted on the FNDA, where bags of construction material had been left on a sidewalk; the Department had received a complaint about them. Navas went to the address and spoke with the elderly homeowner, who had an injured ankle. Navas claimed he had been previously told that the Department would remove similar materials. As a courtesy, Navas placed eight to ten bags in his pickup and drove back to the Department garage. Upon arrival, Baldeo told Navas that the Department Director, Silvio Acosta, wanted him to return the bags. The caller who made the initial complaint had forwarded a

4

video of the removal of the bags, and was now complaining that Navas had taken them. Acosta testified that to remove a homeowner's construction debris violated Department policy. Navas allegedly returned only some of the bags, dumped some at a different residence, and discarded the remaining bags in a Department trash container. Navas testified to the contrary, that he had taken the bags because of the homeowner's age and health, but that he had returned them to their original location.

On May 15, 2017, Acosta claimed he gave defendant a list of properties in violation of waste disposal laws and ordered Navas to write summonses. Navas had never previously issued a summons without being the person who investigated the violation. In response, Navas said he wanted to first contact a union representative, and did so. This prompted a meeting between Navas, Acosta, the union shop steward, Nelson Rodriguez, and Alain Gomez, during which Navas requested Acosta put his order in writing. Navas claimed Acosta refused, saying, "I'm the boss and whatever I say goes." As a result of the grievance Navas filed, the union instructed its inspectors that, when directed to issue summonses for violations they did not witness firsthand, they should record on the summons the name of the person who did. Navas did not write the summonses.

A-4786-18

On May 19, 2017, Acosta testified that the Department was informed a pallet was left outside of a building, creating a hazardous condition. He denied being the supervisor who directed Navas to issue a summons, claiming it was a now-retired supervisor. In any event, Navas went to the property, explained the ordinance to the owner, and when he returned an hour later, the owner had disposed of the pallets. Accordingly, Navas did not issue a summons because of the owner's timely compliance with his request.

Now on appeal, the Town raises the following points for our consideration:

> POINT I
>
> THE CIVIL SERVICE COMMISSION'S DETERMINATION TO ELIMINATE NAVAS' PENALTY WAS ARBITRARY, CAPRICIOUS, UNREASONABLE, AND UNSUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.
>
> A. The Commission's Reversal of Discipline for the May 1, 2017 Incident Was Arbitrary and Capricious and Contrary to the Factual Findings of the OAL.
>
> B. Reversal of Discipline for the May 15, 2017 Incident Was Arbitrary and Capricious and Contrary to the Factual Findings of the OAL.
>
> POINT II

A-4786-18

THE CIVIL SERVICE COMMISSION FAILED TO APPLY OR IN ANY WAY CONSIDER THE CONCEPT OF PROGRESSIVE DISCIPLINE IN REVIEWING THE ALJ'S FINDINGS.

I.

"Ordinarily, an appellate court will reverse the decision of [an] administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "The precise issue is whether the findings of the agency could have been reached on substantial credible evidence in the record, considering the proofs as a whole." In re Hess, 422 N.J. Super. 27, 34 (App. Div. 2011). We affirm, even if convinced we would have reached a different conclusion. Clowes v. Terminix Intern., Inc., 109 N.J. 575, 588 (1988).

Where an agency decision is arbitrary or capricious, the court should remand to the agency for redetermination, however. Henry, 81 N.J. at 580. We are not bound by an agency's interpretation of the law. Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018).

The CSC reviews penalty determinations de novo. Winters v. N. Hudson Reg'l Fire and Rescue, 212 N.J. 67, 81 (2012). However, "[an] agency head

reviewing an ALJ's credibility findings relating to a lay witness may not reject or modify these findings unless the agency head explains why the ALJ's findings are arbitrary or not supported by the record." S.D. v. Div. of Med. Assistance and Health Servs., 349 N.J. Super. 480, 485 (App. Div. 2002). In this case, the CSC "[found] that there [was] sufficient evidence in the record to support the ALJ's credibility determinations." The CSC simply did not, after its de novo review of the record, agree with the ALJ's recommendations regarding the charges.

## II.

The CSC considered the directive the Department issued for Navas to return bags of construction debris he had taken from the front of an elderly homeowner's residence to be "unfathomable." For that reason, the CSC decided the incident did not merit disciplinary action.

As the CSC also noted, however, the record did not include proof that Navas knew, prior to the incident, that he should not pick up the construction materials. No documentation verifying the existence of this policy was introduced during the hearing. That Department protocol made the property owner responsible for removing his or her own construction debris is different than proving that this Department employee knew he was prohibited from

removing construction debris from a resident's home. It would be unreasonable to sustain the charge against Navas if he was unaware of any directive barring him from picking up the bags.

Once Navas removed the debris, it was not reasonable to order him to put them back. Thus, Navas's failure to return the bags did not warrant disciplinary action. As the CSC aptly commented, the incident was not "worthy of a disciplinary action."

"The Commission may adopt, reject or modify the recommended report and decision of an administrative law judge." N.J.A.C. 4A:2-2.9(c). This court "will not upset a determination by the Commission in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implied or implicit in the civil service act." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). Given the facts found by the ALJ, the CSC's determination that the directive issued to Navas "was in no way in the best interest of the public" was not arbitrary, capricious or unreasonable. It was supported by the record and did not violate legislative policies. The decision by the CSC to reverse the ALJ's determination regarding the May 1 incident should not be disturbed.

A-4786-18

## III.

The Town claims the CSC's reversal of the adjudication and penalty regarding the May 15, 2017 incident was arbitrary and capricious. As we earlier noted, the FNDA charged that Navas refused Acosta's order to investigate a list of violations. Despite finding no evidence that he was ever given a list of violations, the ALJ concluded that Navas's failure to issue summonses in connection with this incident was insubordination, neglect of duty, and conduct unbecoming. The CSC in turn reversed the charges because the FNDA did not allege Navas failed to issue a summons, but rather that he refused to investigate.

Hence the charges did not mirror the conduct which formed the basis of the ALJ's decision or the testimony at the hearing. This raises the question of the degree of specificity necessary for an FNDA to fairly describe incidents giving rise to charges. A preliminary notice of disciplinary action must "set[] forth the charges and statement of facts supporting the charges (specifications) . . . ." N.J.A.C. 4A:2-2.5(a).

"Properly stated charges are a [s]ine qua non of a valid disciplinary proceeding. It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority." Town of West New York v. Bock, 38 N.J. 500, 522 (1962).

Therefore, "'[p]lain notice' is the standard to be applied when considering the adequacy of disciplinary charges filed against public employees." Pepe v. Twp. of Springfield, 337 N.J. Super. 94, 97 (App. Div. 2001).

In Campbell, the appellant argued that "charges outside the scope of the preliminary notice were improperly considered." 39 N.J. at 580. The court found, however, the "charges were duly raised before [the] Acting Commissioner [] and the appellant was then advised that they would be considered and that he could introduce evidence to meet them." Ibid. The court further stated: "in any event, the original notice may be considered as having been amended or supplemented to include them specifically. On [appellant's] appeal, they were part and parcel of the charges heard [d]e novo by the Commission which fairly received evidence with respect to them from both [parties]." Ibid. Therefore, he was not prejudiced. Ibid.

In Pepe, a firefighter was charged after perpetrating a false alarm. 337 N.J. Super. at 95-96. The hearing officer disciplined him on several charges not specified in his Notice of Disciplinary Action and of which Pepe therefore lacked written notice before the proceedings. Id. at 96-97. The Law Division judge agreed, but on appeal, the decision was reversed since "the ultimate conclusion reached by the hearing officer fell well within the four corners of

11

those charges and specifications." Id. at 97-98. We decided Pepe had adequate notice because "the obligation of reporting such a clear violation of the law is so basic and primary to [plaintiff's] duties . . . ." Id. at 98. In other words, the technical inadequacies did not nullify the wrong that was suggested in the notice, and which was litigated and ultimately proven against him.

Thus, the issue here is plain notice. The dispute centered over Acosta's instruction to Navas to write summonses, and his response that he did not feel comfortable doing so. Navas clearly understood the instruction because he filed a grievance. He did not consider it reasonable for an inspector to be called upon to issue a summons if he did not conduct the initiating inspection. In fact, as a result of this incident, the union changed the procedure for the issuance of such summonses, and inspectors were directed to note on the summons the name of the individual who actually conducted the inspection.

From the hearing testimony, which detailed the incident and its aftermath, Navas had full notice of the charges and the specifications. Despite the divergence between the written charge and the testimony, Navas knew the specific conduct with which he was charged was his refusal to comply with an order. Under these circumstances, therefore, we remand for the CSC to revisit

this charge and decide it on the merits. The question should be whether Navas refused to follow an order, and if so, whether any defenses to the charge exist.

## IV.

We do not reach the issue of the impact of progressive discipline on Navas's penalty. The subject is rendered moot by the fact that the CSC vacated all charges, and will now be reconsidering one.

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4786-18